# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

BRAD HOGGAN and BR HOGGAN RENTALS AND LEASING, LLC a Utah limited liability company

## DEFENDANTS

WHEATLAND SEED, LLC, a Utah limited liability company, MILLING PARTNERS, LLC, a Utah limited liability company, PETER ARENDT, FRED FROELICH, and PAUL BEUS

**(b)** County of Residence of First Listed Plaintiff    Box Elder County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Salt Lake County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brett W. Hastings, JD - Hastings Law Group, LLC
299 South Main Street, 13th Floor, Salt Lake City, UT  84110
Tel: (801) 721-8066

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☒ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☒ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       Another District
       *(specify)*

☐ 6  Multidistrict
       Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Lanham Act - 15 U.S.C. § 1051 et. seq.
Brief description of cause:
Unfair competition and false designation of origin

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
12/07/2015

SIGNATURE OF ATTORNEY OF RECORD
/s/ Brett W. Hastings

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

Brett W. Hastings [15442]
HASTINGS LAW GROUP, LLC
Wells Fargo Center, 13th Floor
299 South Main Street
Salt Lake City, Utah  84110
Email: Brett@HastingsLaw.us
Tel:     (801) 721-8066
*Attorney for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BRAD HOGGAN and BR HOGGAN RENTALS AND LEASING, LLC, a Utah limited liability company<br>*Plaintiff*<br><br>v.<br><br>WHEATLAND SEED, LLC, a Utah limited liability company, MILLING PARTNERS, LLC, a Utah limited liability company, PETER ARENDT, FRED FROELICH, and PAUL BEUS.<br><br>*Defendants* | **COMPLAINT FOR FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN; STATE UNFAIR COMPETITION; VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT; COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION; ACCOUNTING; and INJUNCTIVE RELIEF**<br><br>Civil No.<br><br>Judge:<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Brad Hoggan (**"Mr. Hoggan"**) and BR Hoggan Rentals and Leasing, LLC, (**"Hoggan Rentals"** and collectively **"Plaintiffs"** or **"Hoggan"**), through legal counsel, alleges and complains of Wheatland Seed, LLC (**"Wheatland"**), Milling Partners, LLC (**"Milling Parnters"**), Peter Arendt (**"Arendt"**), Fred Froelich (**"Froelich"**), and Paul Beus (**"Beus"** and collectively referred to as **"Defendants"**) as follows:

COMPLAINT - Hoggan v. Wheatland Seed

## NATURE OF THE ACTION

This is a civil action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), violation of the Utah Unfair Competition Act, Utah Code Ann. 13-5a-102, violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-4, civil conspiracy, common law trademark infringement, and unfair competition.

## THE PARTIES

1. Brad Hoggan is a resident of Utah and a member and the manager of Hoggan Rentals.

2. Hoggan Rentals is a Utah limited liability company with its principle place of business located in Fielding, Box Elder County, Utah.

3. Wheatland is a Utah limited liability company with its principle place of business located in Brigham City, Box Elder County, Utah.

4. Milling Partners is a Utah limited liability company with a registered agent address of 299 South Main Street, Suite 1300, Salt Lake City, Utah 84111, and a majority member of Wheatland.

5. Peter Arendt is resident of Missouri, sole member of Milling Partners, and purported Manager of Wheatland.

6. Fred Froelich is a resident of Ohio and chief financial officer and/or other officer of Wheatland.

7. Paul Beus is a resident of Utah and an officer of Wheatland.

## JURISDICTION AND VENUE

8. This Court has original and subject matter jurisdiction over Plaintiffs' Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 in that the state law claims arise out of the same controversy, are not overly complex, do not substantially predominate over the federal claims, the federal claims have not been dismissed, and Plaintiff is aware of no reason why this Court should decline supplemental jurisdiction over the state law claims.

10. This Court has personal jurisdiction over all Defendants because each Defendant either resides in the State of Utah or has sufficient purposeful contacts with the State of Utah to extend personal jurisdiction to this Court without offending traditional notions of fair play and justice.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim in this action occurred in this judicial district and this Court has personal jurisdiction over all Defendants.

## BACKGROUND

12. Mr. Hoggan has raised pigeons since 1958 and is a nationally recognized expert in raising racing pigeons, roller pigeons, and fancy pigeons.

13. Through the years Hoggan has developed certain proprietary pigeon feed mixes (the **"Pigeon Mixes"**) and other intellectual property related to pigeon feed, including establishing a common law trademark, under the name "Top Flight," for a pro-biotic pigeon feed additive.

COMPLAINT – Hoggan v. Wheatland Seed

14.  Ownership of the Top Flight trademark, the Pigeon Mixes, and other related intellectual property is currently held by Hoggan Rentals and/or Mr. Hoggan.

15. Hoggan began using the name "Top Flight" in commerce at least as early as April 17, 2007 when he began marketing Top Flight probiotic through www.petvethealth.com (**"Pet Vet"**), a URL owned by Hoggan.

16. Hoggan has continuously marketed Top Flight through Pet Vet and other avenues from April 2007 to the present.

17. On or about December 2009, Hoggan entered into an oral licensing agreement (the **"Licensing Agreement"**) with Wheatland, executed by Wheatland's agent Paul Beus, for the production and marketing of Hoggan's Pigeon Mixes supplemented with the Top Flight probiotic (the **"Top Flight Pigeon Mixes"**).

18. Under the terms of the Licensing Agreement Wheatland was to produce and market the Top Flight Pigeon Mixes and pay to Hoggan a licensing/royalty fee of $.50 for each 50 lbs. bag of Top Flight Pigeon Mixes sold.

19. Prior to entering the Licensing Agreement Wheatland had never before produced or marketed specialized pigeon feed.

20. In September 2015, Plaintiff received notice that Wheatland intended to discontinue its involvement in the pigeon feed business.

21. On or about September 1, 2015, Wheatland terminated the employment of the sole Wheatland employee charged with procuring Top Flight Pigeon Mix sales with the statement that the "position was eliminated."

COMPLAINT – Hoggan v. Wheatland Seed

22. Accordingly, on September 22, 2015, Hoggan terminated the Licensing Agreement and instructed Wheatland to immediately cease using the Hoggan intellectual property including the Top Flight trademark and the Pigeon Mixes, and to liquidate all remaining Top Flight Pigeon Mixes in Wheatland's inventory.

23. On September 28, 2015, Wheatland refused to cease using the Top Flight trademark and to liquidate its inventory of Top Flight Pigeon Mixes claiming termination of the Licensing Agreement required the mutual consent of Wheatland and Hoggan and further claiming that Wheatland had never intended to cease its pigeon feed business or otherwise terminate the Licensing Agreement.

24. On or about October 4, 2015, in an effort to resolve the dispute, Mr. Hoggan met with Beus and Froelich.

25. During the meeting Beus and Froelich admitted that, under the terms of the Licensing Agreement, Wheatland had likely underpaid Hoggan for Top Flight Pigeon Mix sales and committed to audit Wheatland's records and make payment to Hoggan for any deficiency.

26. During the meeting Beus and Froelich also stated that, although Wheatland desired to maintain an ongoing relationship with Hoggan, Wheatland would honor any decision made by Hoggan in this regard.

27. After some consideration, on November 6, 2015, Hoggan notified Wheatland, in writing, of its decision to seek collaboration with a different company in regard to the Top Flight Pigeon Mixes, thus terminating the Licensing Agreement.

COMPLAINT – Hoggan v. Wheatland Seed

28. Accordingly, the November 6, 2015 correspondence demanded, among other things, that Wheatland cease using all Hoggan intellectual property, including use of the Top Flight trademark and the Pigeon Mixes.

29. On November 12, 2015, Wheatland, surreptitiously, knowingly and illegally filed an erroneous application with the United States Patent and Trademark Office (the **"USPTO"**) claiming ownership of the Top Flight trademark and seeking federal registration of the Top Flight trademark.

30. Paul Beus, as the person who negotiated the Licensing Agreement with Brad Hoggan, has actual knowledge that the Top Flight trademark was conceived, developed, and owned by Hoggan, and not by Wheatland.

31. Milling Partners knew or should have known that Wheatland has no valid claim to the Top Flight trademark and that all rights to the mark belong to Hoggan.

32. Peter Arendt knew or should have known that Wheatland has no valid claim to the Top Flight trademark and that all rights to the mark belong to Hoggan.

33. Fred Froelich knew or should have known that Wheatland has no valid claim to the Top Flight trademark and that all rights to the mark belong to Hoggan.

34. Defendants made willful false statements in connection with the erroneous USPTO application in an attempt to convert the Top Flight mark for their own use and profit.

35. On November 20, 2015, in a letter to Hoggan, Defendants, for the first time, made the erroneous claim that Hoggan had no rights in the Top Flight mark or the Pigeon Mixes and claimed ownership of such belonged to Wheatland.

COMPLAINT – Hoggan v. Wheatland Seed

36. Defendant's November 20, 2015 correspondence included the erroneous allegation that Wheatland launched the Top Flight brand at least as early as 2010 and that Hoggan was simply to assist in the production and marketing of the Top Flight brand.

37. On November 25, 2015, in a letter to Defendants, Hoggan strongly refuted Defendant's claim of Wheatland's ownership of the Top Flight trademark, the Pigeon Mixes, and any other intellectual property rightfully owned by Hoggan.

38. The November 25, 2015 correspondence included substantial documentation establishing Hoggan's first use of the Top Flight mark at least as early as April 2007, three years prior to Wheatland's erroneously claimed first use.  *See* attached **Exhibit A**.

39. The November 25, 2015 correspondence again demanded that Defendants cease using the Top Flight mark and all other intellectual property belonging to Hoggan.

40. On November 30, 2015, Hoggan discovered the erroneous and illegal USPTO application filed by Defendants on November, 12, 2015.

41. Hoggan immediately, on November 30, 2015, notified Wheatland, in writing, of its discovery of Wheatland's erroneous and illegal USPTO application and, once again, demanded that Wheatland cease all use of the Top Flight mark, the Pigeon Mixes, and all other intellectual property owned by Hoggan and that Defendants immediately abandon the erroneous USPTO application.

42. Wheatland continues its illegal use Hoggan's Top Flight trademark, Pigeon Mixes, and Hoggan's other intellectual property including illegal commercial advertising, promotion and sales of Top Flight products and Pigeon Mixes.

COMPLAINT – Hoggan v. Wheatland Seed

## FIRST CLAIM FOR RELIEF

**Federal Unfair Competition and False Designation of Origin**
**15 U.S.C. § 1125(a)**

43. Hoggan incorporates herein all preceding paragraphs.

44. Defendants have deliberately and willfully attempted to trade on Hoggan's long standing and hard earned goodwill in the Top Flight mark and Pigeon Mixes by erroneously and illegally claiming ownership of the same.

45. Defendants' unauthorized and tortious conduct has, and will continue to, deprive Hoggan of the ability to control consumer perception of its products offered under the Hoggan name and/or the Top Flight mark, placing the valuable reputation and goodwill of Hoggan in the hands of Defendants.

46. Defendants' conduct is likely to cause confusion, mistake, or deception as to Wheatland's affiliation, connection, or association with Hoggan.

47. Defendants' conduct is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Top Flight products and Pigeon Mixes.

48. Defendants have, and continue to, disseminate in commercial advertisement or promotion, false and misleading descriptions and representations of fact regarding the nature, characteristics, qualities, or geographic origin of Top Flight products and the Pigeon Mixes.

49. Defendants' conduct is in direct violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

50.  Before Defendants' acts alleged in this Complaint, Defendants had direct and full knowledge of Hoggan's prior use of and rights in the Top Flight mark and Pigeon Mixes.

8

COMPLAINT – Hoggan v. Wheatland Seed

51. The knowing, intentional, and willful nature of Defendants' illegal acts renders this an "exceptional case" under 15 U.S.C. § 1117(a).

52. As a result of Defendants' tortious conduct, Hoggan has suffered damages, in an amount to be proven at trial, plus interest, costs and attorneys' fees as allowed by law or equity, including continuing loss of goodwill and reputation established by Hoggan in the Top Flight mark and Pigeon Mixes.

53. Hoggan's continuing loss of goodwill and reputation cannot be properly calculated and thus constitutes irreparable harm and injury for which Hoggan has no adequate remedy at law.

54. Hoggan will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## <u>SECOND CLAIM FOR RELIEF</u>

### Violation of the Utah Unfair Competition Act
### Utah Code Ann. § 13-5a-102

55. Hoggan incorporates herein all preceding paragraphs.

56. Defendants have engaged in unfair competition by knowingly, intentionally, and illegally using Hoggan's Top Flight mark and Pigeon Mixes to trade on Hoggan's long-standing and hard-earned goodwill in the Top Flight mark and Pigeon Mixes, as well as to confuse consumers as to the origin and sponsorship of Hoggan's goods and services.

57. Defendants' acts infringe upon Hoggan's Top Flight trademark and  Pigeon Mixes and has materially damaged the value of Hoggan's intellectual property.

COMPLAINT – Hoggan v. Wheatland Seed

58. As a result of Defendants' tortious conduct, Hoggan has suffered damages, in an amount to be proven at trial, plus interest, costs and attorneys' fees as allowed by law or equity, including continuing loss of goodwill and reputation established by Hoggan in the Top Flight mark and Pigeon Mixes.

59. Hoggan's continuing loss of goodwill and reputation cannot be properly calculated and thus constitutes irreparable harm and injury for which Hoggan has no adequate remedy at law.

60. Hoggan will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## THIRD CLAIM FOR RELIEF

### Violation of the Utah Consumer Sales Practices Act
### Utah Code Ann. § 13-11-4

61. Hoggan incorporates herein all preceding paragraphs.

62. Defendants have engaged in a deceptive act or practice by knowingly, intentionally, and illegally using the Top Flight mark and Pigeon Mixes.

63. Defendants' conduct is likely to cause confusion, mistake, or deception as to Wheatland's affiliation, connection, or association with Hoggan.

64. Defendants' conduct is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Top Flight products and Pigeon Mixes.

65. Defendants have, and continue to, disseminate in commercial advertisement or promotion, false and misleading descriptions and representations of fact regarding the nature, characteristics, qualities, or geographic origin of Top Flight products and the Pigeon Mixes.

COMPLAINT – Hoggan v. Wheatland Seed

66. As a result of Defendants' tortious conduct, Hoggan has suffered damages, in an amount to be proven at trial, plus interest, costs and attorneys' fees as allowed by law or equity, including continuing loss of goodwill and reputation established by Hoggan in the Top Flight mark and Pigeon Mixes.

67. Hoggan's continuing loss of goodwill and reputation cannot be properly calculated and thus constitutes irreparable harm and injury for which Hoggan has no adequate remedy at law.

68. Hoggan will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## FOURTH CLAIM FOR RELIEF

### Trademark Infringement and Unfair Competition
### Utah Common Law

69. Hoggan incorporates herein all previous paragraphs.

70. Defendants have deliberately and willfully attempted to trade on Hoggan's long standing and hard earned goodwill in the Top Flight mark and the Pigeon Mixes by erroneously and illegally claiming ownership of the same.

71. Defendants' unauthorized and tortious conduct has and will continue to deprive Hoggan of the ability to control consumer perception of its products offered under the Hoggan name and/or the Top Flight mark, placing the valuable reputation and goodwill of Hoggan in the hands of Defendants.

72. Defendants' conduct is likely to cause confusion, mistake, or deception as to Wheatland's affiliation, connection, or association with Hoggan.

COMPLAINT – Hoggan v. Wheatland Seed

73. Defendants' conduct is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the Top Flight products and the Pigeon Mixes.

74. Before Defendants' acts alleged in this Complaint, Defendants had direct and full knowledge of Hoggan's prior use of and rights in the Top Flight mark and Pigeon Mixes.

75. As a result of Defendants' tortious conduct, Hoggan has suffered damages, in an amount to be proven at trial, plus interest, costs and attorneys' fees as allowed by law or equity, including continuing loss of goodwill and reputation established by Hoggan in the Top Flight mark and Pigeon Mixes.

76. Hoggan's continuing loss of goodwill and reputation cannot be properly calculated and thus constitutes irreparable harm and injury for which Hoggan has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### Civil Conspiracy
### Utah Common Law

77. Hoggan incorporates herein all previous paragraphs.

78. Defendants have conspired to knowingly, intentionally, and illegally trade on Hoggan's long standing and hard earned goodwill in the Top Flight mark and the Pigeon Mixes by

a.  knowingly and intentionally making false claims of ownership of the Top Flight mark and the Pigeon Mixes;

b.  knowingly and intentionally making false statements of ownership and other false statements in connection with the erroneous USPTO application filed on

12

Defendant's behalf on November 12, 2015, in violation of 18 U.S.C. § 1001 and

Utah law; and

c.   knowingly and intentionally disseminating in commercial advertisement or

promotion, false and misleading descriptions and representations of fact regarding

the nature, characteristics, qualities, or geographic origin of Top Flight products

and the Pigeon Mixes.

79. Defendants had a meeting of the minds regarding the illegal acts detailed above for

the purpose of illegally converting the Top Flight mark and Pigeon Mixes to Wheatland's use

and to profit thereby.

80. As a result of Defendants' civil conspiracy, Hoggan has suffered damages, in an

amount to be proven at trial, plus interest, costs and attorneys' fees as allowed by law or equity,

including continuing loss of goodwill and reputation established by Hoggan in the Top Flight

mark and Pigeon Mixes.

81. Hoggan's continuing loss of goodwill and reputation cannot be properly calculated

and thus constitutes irreparable harm and injury for which Hoggan has no adequate remedy at

law.

## SIXTH CLAIM FOR RELIEF

### Accounting

82. Hoggan incorporates herein all preceding paragraphs.

83. Defendants are knowingly, intentionally, and illegally trading on Hoggan's long standing and hard earned goodwill in the Top Flight mark and the Pigeon Mixes by illegally using and erroneously claiming ownership of the same.

84. Defendants have admitted that Wheatland has likely underpaid Hoggan under the terms of the Licensing Agreement.

85. Hoggan is not in control of the financial affairs of Wheatland and therefore cannot ascertain the correct amount owed to Hoggan under the Licensing Agreement and to whom Defendants may have illegally sold Top Flight goods or Pigeon Mixes after termination of the Licensing Agreement.

86. Hoggan, therefore, is entitled to an accounting from Defendants of all sales of Top Flight goods and Pigeon Mixes and an accounting of all royalty payments made to Hoggan from the inception of the Licensing Agreement to the present date.

**<u>SEVENTH CLAIM FOR RELIEF</u>**

**Temporary, Preliminary, and Permanent Injunctive Relief**

87. Hoggan incorporates herein all preceding paragraphs.

88. Defendants' tortious conduct is inflicting on Hoggan a continuing loss of goodwill and reputation established by Hoggan in the Top Flight mark and Pigeon Mixes.

89. Defendants' tortious conduct will continue to cause such harm unless Defendants are immediately and permanently enjoined from continuing their tortious conduct.

COMPLAINT – Hoggan v. Wheatland Seed

90. The potential and actual injuries to Hoggan, redressed by the requested injunctive relief, outweigh whatever damage, if any, Defendants' may suffer if the requested injunctive relief is granted.

91. Immediate and permanent restraint of Defendants' tortious conduct is not adverse to the public interest.  To the contrary, the public interest is best served by enjoining such tortious conduct.

92. There is a substantial likelihood that Hoggan will prevail on the merits of its claims against Defendants.

93. Hoggan's continuing loss of goodwill and reputation cannot be properly calculated and thus constitutes irreparable harm and injury for which Hoggan has no adequate remedy at law.

94. Hoggan is, therefore, entitled to an immediate and permanent order of this Court enjoining Defendants from engaging in the tortious conduct described herein and any other acts purposely designed to damage Hoggan.

## PRAYER FOR RELIEF

WHEREFORE, Hoggan prays for relief as follows:

A. Entry of an order, on a preliminary and then permanent basis, requiring that Defendants and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from the following:

COMPLAINT – Hoggan v. Wheatland Seed

     i.    Using, in any manner, the Top Flight trademark and Pigeon Mixes, or any name, mark, or other intellectual property owned by Hoggan.

    ii.    Doing any act or thing calculated or likely to cause confusion or mistake in the minds of the public or existing or prospective consumers of Hoggan's products or services as to the source of those products or services.

   iii.    Doing any act or thing calculated or likely to lead the public to believe that Hoggan is affiliated with, sponsors, or approves of Defendants or their products or services.

B. Entry of an order, under 15 U.S.C. § 1116(a), directing Defendants to file with this Court and serve upon Hoggan within 30 days after entry of the injunction a written report under oath describing in detail the manner and form in which Defendants have complied with the injunction, including ceasing all offering of products or services under the Top Flight mark or use of Hoggan's Pigeon Mixes.

C. Entry of an order, in accordance with 15 U.S.C. § 1118, directing Defendants to preserve through trial and then to deliver up for destruction all items in Defendant's possession containing or in any way relating to the Top Flight mark, Pigeon Mixes, or any other intellectual property owned by Hoggan.

D. Entry of an order, directing Defendants to take all steps necessary to cancel any of Defendant's federal, state, or local applications or registrations of the Top Flight mark or any other filing in which Defendants claim ownership or rights in any Hoggan intellectual property,

COMPLAINT – Hoggan v. Wheatland Seed

including immediate abandonment of the erroneous USPTO application filed on Wheatland's behalf on November 12, 2015.

E. Entry of an order directing Defendants to retain and disclose all communications with all individuals and entities with whom they engaged in any transaction relating to or arising from the use of Hoggan's Top Flight mark, Pigeon Mixes, or other intellectual property, or otherwise in furtherance of the illegal acts detailed herein.

F. Entry of an order directing Defendants to provide an accounting of all sales of Top Flight goods and Pigeon Mixes and an accounting of all royalty payments made to Hoggan from the inception of the Licensing Agreement to the present date, including an accounting of all profits derived therefrom.

G. Entry of an order directing Defendants to pay a judgment in the amount of Hoggan's actual damages under 15 U.S.C. § 1117 and Utah law, including Hoggan's reasonable attorney fees and costs as well as Defendants' profits, and pre and post judgment interest, in an amount to be proven at trial.

H. Entry of an order directing Defendants to pay Hoggan a judgment for enhanced damages under 15 U.S.C. § 1117 and punitive damages under Utah law, as appropriate.

I. Entry of an order granting Hoggan any other legal or equitable relief this Court deems just.

## DEMAND FOR JURY TRIAL

Hoggan hereby demands trial by jury as to all issues in this action.

COMPLAINT – Hoggan v. Wheatland Seed

RESPECTUFLLY SUBMITTED this this 7th day of December, 2015.


                        /s/:  Brett W. Hastings
                        Brett W. Hastings
                        HASTINGS LAW GROUP, LLC
                        *Attorney for Plaintiff*

COMPLAINT – Hoggan v. Wheatland Seed

**EXHIBIT A**
**Hoggan Letter to Wheatland of November 20, 2015**

COMPLAINT – Hoggan v. Wheatland Seed

Wells Fargo Tower
299 South Main Street, 13th Floor
Salt Lake City, Utah 84110
Tel: 801.721.8066
Email: Office@HastingsLaw.US

November 25, 2015

**_Via Email Delivery_**

Mr. Mark D. Tolman
Jones, Waldo Holbrook & McDonough PC
170 South Main Street, Suite 1500
Salt Lake City, UT 84101
MTolman@JonesWaldo.com

  Re:  *Top Flight Pigeon Mixes*

Dear Mr. Tolman,

  Thank you for your time on the telephone yesterday afternoon. We write in response to our telephone conversation and your letter dated November 20, 2015.

## I. Top Flight Trademark and Proprietary Pigeon Feed Mixes.

  As we discussed, your client's claims of ownership of the Top Flight trademark and Mr. Hoggan's proprietary pigeon feed mixes are incorrect. The attached documents clearly establish that Brad Hoggan created the Top Flight trademark and the proprietary pigeon feed mixes and has continually used this intellectual property in commerce since at least March of 2007. The attached documents include the following:

- Copies of several invoices memorializing sales of "TOP FLIGHT" through PetVetHealth.com dated as early as April 17, 2007.
- Copy of the registration information for www.petvethealth.com, a URL owned by Brad Hoggan, showing that it was registered in 2007. Top Flight products have been sold through the Pet Vet Health website continuously since its inception.
- A copy of a full page ad run in the August 2015 issue of Racing Pigeon Digest, with copy that reads "Top Flight Feed is developed by famous racer Brad Hoggan . . . .
- A screenshot of www.wheatlandseedtopflight.com that includes the statement "Top Flight Feed Developed By The Famous Racer Brad Hoggan."

  It is difficult to believe that Wheatland Seed is unaware of the attached information. The advertisements mentioned where placed and paid for by Wheatland Seed and Wheatland Seed's own website links to the Pet Vet Health website. Wheatland

Seed offered no pigeon feed mixes prior to their association with Mr. Hoggan, a fact well known to Paul Beus, a long-time employee of Wheatland Seed.

## II. Brad Hoggan Agreement with Wheatland Seed.

Your assertions regarding the purported agreement between Mr. Hoggan and Wheatland Seed are also incorrect.

Your letter of November 20, 2015, states that "no one authorized to speak for Wheatland has ever stated that Wheatland was discontinuing its involvement in the bird seed business." In our letter dated November 6, 2015, we detailed a meeting and conversation between Mr. Hoggan, Paul Bues, and Fred Froelich. In that meeting Mr. Bues and Mr. Froelich consented to honor Mr. Hoggan's decision to terminate whatever association he may have had with Wheatland Seed. Your statement implies that either, Mr. Beus and Mr Froelich lack capacity to obligate Wheatland Seed, or that the described meeting never took place. Both assertions are incorrect. The meeting did take place and both Mr. Beus and Mr. Froelich can bind Wheatland Seed. Additionally, in a letter to Mindi Hoggan dated September 4, 2015, a copy of which is attached, Wheatland clearly states that Mindi Hoggan's "position was eliminated." Mindi Hoggan's position with Wheatland Seed was solely as director of pigeon seed sales and marketing. On November 16, 2015, in a conversation with myself, Mindi Hoggan, and Jared Hoggan, Lynn Perry stated that Pete Arendt told him that Wheatland was discontinuing its involvement in the pigeon feed business. Wheatland Seed clearly communicated its intent to terminate any agreement it may have had with Brad Hoggan.

Furthermore, mutual termination is not required. The writing you rely on to establish an obligation of mutual termination was never executed. Many of the terms of the writing are inconsistent with the relationship the parties have had with each other as detailed below:

- Wheatland has not paid the royalty owed to Mr. Hoggan within 30 days of the end of each quarter.
- Wheatland did not require exclusivity to Top Flight or the mixes. As stated above, Mr. Hoggan has continuously marketed Top Flight and his pigeon feed mixes through his website PetVetHealth.com, with Wheatland Seed's knowledge and consent.

At most, the agreement between the parties is oral and subject to termination by either party at will. The point, however, is mute as Wheatland Seed has clearly agreed to terminate any agreement it may have had with Mr. Hoggan, as detailed above.

### III. Wheatland's Review of Amounts Owed to Brad Hoggan.

We are pleased that Wheatland is conducting a review of amounts owed to Mr. Hoggan.  Please notify us as soon as Wheatland's review is complete and send to us reports detailing all sales of Top Flight product and pigeon feed mixes from December 2009 to the present so that we can independently confirm the amount owed.

In summary, Brad Hoggan is the developer and owner of the Top Flight trademark and proprietary pigeon feed mixes.  Wheatland has agreed to terminate any agreement it may have had with Brad Hoggan.  We, therefore, reaffirm our demand that Wheatland immediately do the following:

- Cease all use of intellectual property belonging to Mr. Hoggan including all Top Flight, Brad Hoggan, Roller, and Fancy feed mix recipes and any related names, logos, or taglines.
- Immediately remove any reference to Top Flight, Brad Hoggan, Roller, and Fancy from Wheatland advertising materials, including websites.
- Deliver to Mr. Hoggan any documents, packaging, or other items containing the Top Flight, Brad Hoggan, Roller, or Fancy name, logo, mix recipes, or other intellectual property belonging to Mr. Hoggan.
- Notify Mr. Hoggan of the quantity of Top Flight, Brad Hoggan, Roller, or Fancy brand pigeon feed remaining in Wheatland's inventory and Wheatland's plans to liquidate such inventory.
- Within the next 30 days, complete an audit of Wheatland's financial records to determine the amount of past due commissions owed to Mr. Hoggan, provide a detailed supporting report, and pay such amount to Mr. Hoggan.

If you do not timely respond and comply with these demands, we will pursue legal action to defend Mr. Hoggan's rights and interests.

Sincerely,

Brett W. Hastings
HASTINGS LAW GROUP, LLC

PetVet Health

# Sales Receipt

PetVet Health
P.O. Box 174
Fielding, UT. 84311
www.petvethealth.com

| Date | Sale No. |
|------|----------|
| 12/3/2007 | 581 |

| Sold To |
|---------|
| Ralph Parziale<br>171 Lucille Ave.<br>Staten Island, NY 10309<br>USA |

| | Check No. | Payment Method | Project |
|---|-----------|----------------|---------|
| | 1038 | Check | |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| 1 lb. - TOP FLIGHT | 1 | 34.95 | 34.95 |
| Shipping and Handling Costs | 1 | 5.95 | 5.95 |

Paid

**Total** $40.90

PetVet Health

# Sales Receipt

PetVet Health
P.O. Box 174
Fielding, UT. 84311
www.petvethealth.com

| Date | Sale No. |
|---|---|
| 10/29/2007 | 563 |

| Sold To |
|---|
| Curtis Templeton<br>3441 Harbor Beach<br>Lake Wales, FL 33859<br>USA |

| Check No. | Payment Method | Project |
|---|---|---|
| 5CE21947JM8261... | PayPal | |

| Description | Qty | Rate | Amount |
|---|---|---|---|
| 16 oz. TOP FLIGHT | 1 | 19.95 | 19.95 |
| Shipping and Handling Costs | 1 | 4.95 | 4.95 |

Paid

**Total** $24.90

PetVet Health

# Sales Receipt

PetVet Health
P.O. Box 174
Fielding, UT. 84311
www.petvethealth.com

| Date | Sale No. |
|------|----------|
| 6/22/2007 | 529 |

| Sold To |
|---------|
| Michael Berokoff<br>12919 Union Hall Road.<br>Canby, OR 97013<br>USA |

| | Check No. | Payment Method | Project |
|---|-----------|----------------|---------|
| | 9VR12255BP5346... | PayPal | |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| 3lb. = 1 gallon - TOP FLIGHT | 1 | 79.95 | 79.95 |
| Shipping and Handling Costs | 1 | 9.95 | 9.95 |

| Paid | **Total** | |
|------|-----------|---|
| | | $89.90 |

PetVet Health

# Sales Receipt

PetVet Health
P.O. Box 174
Fielding, UT. 84311
www.petvethealth.com

| Date | Sale No. |
|------|----------|
| 4/17/2007 | 508 |

| Sold To |
|---------|
| Allen Galli<br>4245 N Manila Ave.<br>Fresno, Ca 93727<br>USA |

| Check No. | Payment Method | Project |
|-----------|----------------|---------|
| 061964 | Visa | |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| 1 lb. - TOP FLIGHT | 1 | 34.95 | 34.95 |
| Shipping and Handling Costs | 1 | 5.95 | 5.95 |

Paid

**Total**  $40.90



**WHO**is**.net**℠

Your Domain Starting Place...

Type here for whois, domain and keyword results

## WHOIS LOOKUP

 **petvethealth.com is already registered\***

Whois Server Version 2.0

Domain names in the .com and .net domains can now be registered
with many different competing registrars. Go to http://www.internic.net
for detailed information.

Domain Name: PETVETHEALTH.COM
Registrar: GODADDY.COM, LLC
Sponsoring Registrar IANA ID: 146
Whois Server: whois.godaddy.com
Referral URL: http://registrar.godaddy.com
Name Server: NS1.DROIDHOST.COM
Name Server: NS2.DROIDHOST.COM
Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Updated Date: 16-apr-2015
Creation Date: 10-mar-2007
Expiration Date: 10-mar-2016

>>> Last update of whois database: Tue, 24 Nov 2015 23:36:39 GMT <<<

For more information on Whois status codes, please visit
https://www.icann.org/resources/pages/epp-status-codes-2014-06-16-en.

NOTICE: The expiration date displayed in this record is the date the
registrar's sponsorship of the domain name registration in the registry is
currently set to expire. This date does not necessarily reflect the expiration
date of the domain name registrant's agreement with the sponsoring
registrar. Users may consult the sponsoring registrar's Whois database to
view the registrar's reported date of expiration for this registration.

TERMS OF USE: You are not authorized to access or query our Whois

### Premium Domains

| | | |
|---|---|---|
| ☐ petpawlor.com | $2500.00 |
| ☐ sommartorpet.com | $2295.00 |
| ☐ thepetpawlor.com | $3095.00 |

🛒 BUY SELECTED

### Popular

| | | |
|---|---|---|
| ☐ petvethealth.biz | $12.89 |
| ☐ petvethealth.cc | $29.99 |
| ☐ petvethealth.us | $14.99 |
| ☐ petvethealth.info | $12.40 |
| ☐ petvethealth.net | $13.60 |

🛒 BUY SELECTED

### Descriptive

| | | |
|---|---|---|
| ☐ petvethealth.gripe | $24.60 |
| ☐ petvethealth.bio | $47.26 |

### Filters

☑ Popular
☐ Arts and Culture
☐ Audio and Video
☐ Businesses
☐ Colors
☐ Computers and Internet
☑ Descriptive
☐ Educational and Academic
☐ Financial and Banking
☐ Food and Drink
☐ Fun and Unique
☐ Geographic
☑ Health and Fitness
☐ Lifestyles and Relationships
☐ Marketing and Sales
☐ Media and Music
☐ Organizations
☐ Personal

# RACING PIGEON DIGEST
## The Thinking Person's Journal of Racing Pigeons
*America's number one publication in the sport*

APRIL 15, 2015

# WHEATLAND
## TOP FLIGHT PIGEON FEED

# PROBIOTIC PREMIUM PIGEON MIXES

### Wheatland Seed

Wheatland Seed began when a father and son bought out a small seed company in 1977. Initially, only two products were offered to the public, organic grains and flours and seed for farmers and seed dealers. Today Wheatland sells over two hundred products including safflower, alfalfa, small grains, flour, a variety of grass seed, and Top Flight Pigeon Seed.

Wheatland's growth was precipitated by expanding existing markets as they endeavored to diversify their product offerings. Seeing the growing need for expansion, Wheatland Seed built an additional facility in Collinston, Utah. The Collinston facility has been expanded three times.

### Top Flight Pigeon Seed

Top Flight is a dual-balanced enzyme supplement improving feed, advancing your teams digestion, ultimately enhancing the endurance of your birds! Top Flight has an essential array of balanced enzymes and trace mineral electro-lytes for your teams optimal performance. This is an essential part of a modern loft program.

Simply put, Top Flight Pigeon Feed will aid in your teams digestion and improve endurance!

Visit wheatlandseedtopflight.com for more information

Top Flight Feed is developed by famous racer Brad Hoggan and is
- Triple Cleaned
- Grade AAA+
- 100% All Natural
- Made with finest Safflower on Earth



Basic Pigeon w/ Popcorn
Protein 13.0%, Fat 4.0%, Fiber 5.65%



Maintenance Mix
Protein 15.0%, Fat 5.0%, Fiber 6.6%



Performance Mix
Protein 15.0%, Fat 6.0%, Fiber 6.6%



Breeders Mix
Protein 18.0%, Fat 6.0%, Fiber 6.6%



Racing Mix
Protein 16.0%, Fat 7.0%, Fiber 6.6%

## WHEATLAND SEED

Mindi Hoggan
435-225-3825
mindi@wheatlandseed.com



# WHEATLAND
### SEED

## TOP FLIGHT
## PIGEON FEED

- Home
- Feeds
- What are Probiotics?
- Wheatland Seed
- About Brad Hoggan
- Storage Wheat
- Contact Us
- Testimonials



We are very excited to introduce our new **probiotic** premium pigeon mixes. It is our goal to provide you with a quality product as well as quality service.

All our mixes include **Top Flight Probiotic.**

Finally a pigeon feed designed for the homing pigeon enthusiast. Top Flight provides a balanced diet with numerous human grade seeds. All seeds are cleaned 3 times before bagging, with no screening ensuring a clean and nutritious diet for your birds. Pro-biotics are applied to every bag, they are designed to advance your teams digestion, enhancing the endurance and performance of your racing birds! Top Flight has an essential array of balanced enzymes and trace mineral electrolytes for your team optimal performance. This is an essential part of a modern loft program.

*Top Flight Feed*
*Developed By*
*The Famous Racer*
*Brad Hoggan*

Personal And Confidential
September 4th, 2015

Dear Mindi

This letter proposes the following Separation Agreement and General Release (Agreement) between you and Wheatland Seed LLC (Company) regarding the terms of your separation from Company.

1. You were employed by the Company until September 1st when your position was eliminated. In exchange for the promises contained in this Agreement, and provided that you sign, return and do not revoke this Agreement the Company promises:

A. To pay you severance of $7,400 less any outstanding employee advances; and to pay you accrued commissions of $9,400; plus earned commisions in August 2015, both payments to be made 7 days after you sign this letter. Payments indicated DO NOT reflect stock owned by employee.

B. To pay for, if you request, an outplacement service (to be selected by the Company) for up to 3 months or until you find employment.

C. To provide you certain benefits to which you are entitled under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and benefits under the Company's 401(K) Plan.

2. This Agreement shall not be construed in any way as an admission by the Company that it acted wrongly with respect to you or any other person, or that you have any rights whatsoever against the Company or Releasees spelled out by name.

3. In consideration of the promises contained in this Agreement, you agree:

A. On behalf of yourself and anyone claiming through you, irrevocably and unconditionally to release, acquit and forever discharge the Company its owners, predecessors, successors and assigns, as well as their past and present officers, directors, employees, shareholders, trustees, joint venturers, partners, and anyone claiming through them (collectively referred to as Releasees Identifed), in their individual and/or corporate capacities, from any and all claims, liabilities, promises, actions, damages and the like, known or unknown, which you ever had against any of the Releasees arising out of or relating to your employment with the Company and/or the termination of your employment with the Company. Said claims include, but are not limited to: (1) employment discrimination (including claims of sex discrimination and/or sexual harassment) and retaliation under Title VII (42 U.S.C.A. 2000e etc.) and under 42 U.S.C.A. section 1981 and section 1983, age discrimination under the Age Discrimination in Employment Act (29 U.S.C.A. sections 621-634) as amended, and/or any other relevant state statutes or municipal ordinances; (2) disputed wages; and (3) wrongful discharge and/or breach of any alleged employment contract; and (4) claims based on any tort, such as invasion of privacy, defamation, fraud and infliction of emotional distress.

B. You shall not bring any legal action against any of the Releasees for any claim waived and released under this Agreement and that you represent and warrant that no such claim has been filed to date. You further agree that should you bring any type of administrative or legal action arising out of claims waived under this Agreement, the prevailing party shall be entitled to ~~you will bear~~ all legal fees and costs incurred by the prevailing party in such legal action~~, including those of the Releasees.~~

C. You agree that you will not disclose the fact of and terms of this Agreement, including the severance benefits, to anyone other than your attorney, except as otherwise required by law.

D. You agree that you will not directly or indirectly, contact, solicit, induce or recruit any customer, supplier or employee of the Company for a period of 12 months. In the event that such customer, supplier, or employee of the Company initiates the communication with you, this provision will have no import or effect on your business relationship and dealings with such customer, supplier, or employee of the Company.

E. You will return to Company all of the Company's property in your possession. You further represent and warrant that you have not retained any copies, electronic or otherwise, of such property.

F. You will cooperate fully with the Company in its defense of or other participation in any administrative, judicial or other proceeding arising from any charge, complaint or other action that has been or may be filed.

G. You agree that you will not make any comments relating to the Company or its employees which are critical, derogatory or which may tend to injure the business of the Company.

H. In the event that you breach any of your obligations hereunder, any outstanding obligations of the Company hereunder shall immediately terminate~~, and any payments previously made to you pursuant to Paragraph C shall be returned to the Company.~~

I. You also acknowledge that you have been informed pursuant to the federal Older Workers Benefit Protection Act of 1990 that you have the right to consult with an attorney before signing this Agreement; you have twenty-one (21) days from the date of this letter to consider this Agreement; you have seven (7) days after signing this Agreement to revoke the Agreement, and the Agreement will not be effective until that revocation period has expired.

J. The provisions of this Agreement are severable. If any provision is held to be invalid or unenforceable, it shall not affect the validity or enforceability of any other provision.

K. This Agreement sets forth the entire agreement between you and the Company and supersedes any and all prior oral or written agreements or understandings between you and the Company concerning the subject matter of this Agreement. This Agreement may not be altered, amended or modified, except by a further written document signed by you and the Company.

L. If you are willing to enter into this Agreement, please signify your acceptance in the space indicated below. As I noted earlier, this Agreement will not become effective, and none of the severance benefits detailed above, until seven (7) days after the date you sign this Agreement.

PLEASE READ CAREFULLY. YOU ARE GIVING UP ANY LEGAL CLAIMS THAT YOU HAVE AGAINST THE COMPANY BY SIGNING THIS AGREEMENT.

Sincerely,                                          Accepted and Agreed


Signature, Title and Date                          Print Name and Date